**CONNECTICUT HOSPITAL ASSOCIATION, et al., Plaintiffs,**

v.

**William A. O'NEILL, Governor of the State of Connecticut, and Lorrain Aronson, Commissioner of the Department of Income Maintenance of the State of Connecticut, Defendants.**

**Civ. No. N–90–714 (WWE).**

United States District Court, D. Connecticut.

June 8, 1992.

Mark R. Kravitz, J. Michael Eisner, Brian J. Casey, Williams & Dana, New Haven, Conn., for plaintiffs.

Henry Salton, Kenneth Graham, Arnold Menchel, Asst. Attys. Gen., Hartford, Conn., for defendants.

## RULING ON MOTION TO DISMISS

EGINTON, District Judge.

Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiffs' complaint.

Plaintiffs, the Connecticut Hospital Association and thirty three of its member hospitals, commenced this action against Defendants, the Commissioner of the Connecticut Department of Income Maintenance (DIM) and the Governor of Connecticut, challenging Connecticut's Medicaid rate-setting methodology for inpatient hospital reimbursement. Plaintiffs allege that Connecticut's reimbursement policy violates: Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.;* the due process clause of the fourteenth amendment to the United States Constitution; and 42 U.S.C. § 1983.

In the instant motion, Defendants contend that because the rate-setting methodology employed by the DIM is, in fact, the federal Medicare rate-setting methodology and the DIM is paying at the maximum amount permitted by federal law, the complaint should be dismissed pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief should be granted.

Magistrate Judge Thomas P. Smith granted Defendant's motion in an opinion dated October 31, 1991. Plaintiffs have objected to this opinion, and now seek review of the Magistrate Judge's ruling. Pursuant to 28 U.S.C. § 636 the court now reviews the Magistrate Judge's opinion *de novo.* For the reasons set forth below, the court declines to affirm his opinion. Defendants' motion to dismiss will be denied.

## FACTS

The Magistrate Judge's opinion recites a detailed summary of the procedural background. The court will include herein only that which is necessary for this review. The Medicaid Program (the "Act") was established pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq*. It establishes a joint federal and state cost-sharing system to provide necessary medical services to indigent persons. Although participation in this system is optional, once a state does elect to participate, it must comply with all statutory and regulatory requirements imposed by the Act.

To qualify for federal reimbursement, a state must submit to the Secretary of the United States Department of Health and Human Services (the "Secretary") for approval, a "plan for medical assistance", 42 U.S.C. § 1396a(a), that contains a comprehensive statement describing the nature and scope of the state's Medicaid program. 42 CFR § 430.10. Upon approval of a state plan by the Secretary, the state is entitled to receive reimbursement from the federal government for a percentage of the funds it pays to residential health care facilities which provide medical assistance to Medicaid recipients. 42 U.S.C. § 1396b(a).

When enacted in 1965, the Act required reimbursement of the "reasonable cost" of inpatient services provided to Medicaid patients. Congress amended the Act in 1972 to give states more flexibility to develop methods and standards for reimbursement, but retained the "reasonable cost" requirement. However, in 1980 the "reasonable cost" standard was repealed with the enactment of the Boren Amendment, 42 U.S.C. § 1396a(a)(13)(A). The Boren Amendment requires reimbursement of health care providers at rates that "are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C. § 1396a(a)(13)(A).

The Boren Amendment was enacted with the purpose of providing the states with greater flexibility in setting reimbursement rates and to increase the economy and efficiency of all plans. *See* S.Rep. No. 139, 97th Cong., 1st Sess. 478 (1980), U.S.Code Cong. & Admin.News 1981, pp. 396, 744. However, "[t]he flexibility given the States [was] not intended to encourage arbitrary reductions in payment that would adversely affect the quality of care." S.Rep. No. 139, *supra*, at 478, U.S.Code Cong. & Admin.News 1981, p. 744.

The regulations under the Act require a state to make a finding at least annually that its rates are "reasonable and adequate," 42 CFR § 447.253(b)(1), though the state is required to submit assurances to that effect to the Health Care Financing Administration ("HCFA") only when it makes a change in its reimbursement rates. 42 CFR § 4447.253(a).

The current Connecticut Medicaid inpatient hospital reimbursement methodology was promulgated by the DIM in 1982. It uses a two-track approach. Every year the DIM determines each hospital's reasonable inpatient costs attributable to Medicaid patients by referring to reports submitted by the hospitals and to Medicare reasonable cost reimbursement principals. In addition, the DIM also determines inpatient costs based on hospital cost data from fiscal year 1982 as determined under reimbursement principals set forth in the Tax Equity and Fiscal Responsibility Act of 1983 ("TEFRA"). This TEFRA figure is updated yearly. The DIM reimburses the hospitals for inpatient services provided to Medicaid patients at the lesser of the Medicare or TEFRA rate. *See* Conn. Agencies Regs. §§ 17–312–101, 102 & 104(a)(2).

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). When deciding a motion to dismiss under the Federal Rules of Civil Procedure, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40

L.Ed.2d 90 (1974). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

 The Boren Amendment creates a right, enforceable in a suit brought pursuant to 42 U.S.C. § 1983, to have a state adopt Medicaid rates that it finds are reasonable and adequate, regardless of the existence of state administrative remedies. *Wilder v. Virginia Hosp. Ass'n.*, 496 U.S. 498, 110 S.Ct. 2510, 2524–25 & n. 20, 110 L.Ed.2d 455 (1990). A state has discretion to choose from a variety of reasonable methods of calculating Medicaid rates, but a court may still review the rates to determine if they are indeed reasonable and adequate. *Wilder*, 110 S.Ct. at 2513. In ruling on a motion to dismiss a suit challenging the adequacy of a state's Medicaid rates, a court cannot simply defer to a state's right to determine its own Medicaid plan. *See Pinnacle Nursing Home v. Axelrod*, 928 F.2d 1306, 1316–17 (2d Cir.1991).

I. Violation of the Medicaid Program

A) Count I

Count I of the complaint alleges that Connecticut's methodology for determining inpatient hospital reimbursement rates does not comply with the statutory and regulatory requirements of the Boren Amendment. The Magistrate Judge determined that regulations promulgated by the Secretary in 1983, specifically 42 C.F.R. § 447.272, limited Medicaid payments by states to a reasonable estimation of what Medicare payments would have been for similar services. The Magistrate Judge then examined Connecticut's Medicaid history, and determined that since the DIM employs the Medicare reasonable cost principals to calculate Medicaid reimbursements to hospitals, and that since this "reasonable cost" standard was actually more stringent than what was required under the flexible Boren Amendment, Connecticut's methodology complied with the Boren Amendment as a matter of law.

Because the DIM reimburses hospitals at the lesser of the Medicare or TEFRA rate, *see* Conn. Agencies Regs. § 17–312–104(a)(2), it is quite possible that DIM has been reimbursing hospitals at less than the "reasonable cost" Medicare rate. Accepting Plaintiffs' well-pleaded allegations as true, the acute-care hospitals in Connecticut have been receiving reimbursements for several years at far below their Medicaid patient costs, reasonable or otherwise.

 It is impossible for this court to make a determination as to the reasonableness of Connecticut's reimbursement plan without detailed evidence on exactly what that plan provides the state's hospitals. Therefore, the court cannot conclude that, drawing all inferences in Plaintiffs' favor, they present no grounds in Count I upon which relief should be granted. In a case by nursing homes challenging New York State's Medicaid reimbursements under the Act, the Second Circuit held that it was improper for a district court to dismiss the case where the record was unclear as to the adequacy of reimbursements. *Pinnacle Nursing Home v. Axelrod*, 928 F.2d 1306, 1316 (2d Cir.1991).

 The Magistrate Judge recognized that the DIM may be providing reimbursements at the TEFRA rate and not the Medicare rate, and that because the TEFRA rate does not take account of increased costs the hospitals are now receiving reimbursements at less than their Medicaid patient costs. The Magistrate Judge concluded that the TEFRA system as adopted by Connecticut allows hospitals to seek increases in Medicaid reimbursements from the DIM, *see* Conn. Agencies Regs. § 17–312–102(h), and therefore the hospitals' arguments to this court that TEFRA was inadequate were misdirected.

The hospitals are entitled to petition the DIM for increased reimbursements, but their failure to do so does not preclude them from bringing suit here. To hold otherwise would fly in the face of *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), where,

after examining Virginia's reimbursement procedures (which like Connecticut's did not allow health care providers to challenge the overall method by which rates are determined), the Supreme Court held that "limited state administrative procedures cannot be considered a 'comprehensive' scheme that manifests a congressional intent to foreclose reliance on § 1983." *Wilder*, 110 S.Ct. at 2524–25. The right to request an increase in TEFRA reimbursements, when viewed against the entire Connecticut Medicaid reimbursement system, is a limited right, and does not mandate dismissal of Plaintiff's first claim.

**B) Count II**

Count II of the complaint alleges that Connecticut has failed to make findings and provide assurances that its reimbursement methodologies and resulting rates meet the Act's standards pursuant to 42 U.S.C. § 1396a(a)(13)(A) and 42 C.F.R. § 447.253. The Magistrate Judge determined that because the Connecticut State plan adopts the Medicare reasonable cost principles, its findings adequately satisfy the "reasonably principled analysis" requirement enumerated in *Folden v. Washington State Dept. of Social & Health Services*, 744 F.Supp. 1507, 1532 (W.D.Wash.1990). In the alternative, the Magistrate Judge held that, even if the findings and assurances were inadequate, such a violation of the Act was merely "procedural noncompliance," and did not rise to a substantive level sufficient to mandate judicial intervention.

As noted above, the Boren Amendment requires Connecticut to make findings at least annually that its Medicaid plan complies with the Act. Connecticut is not required to submit these findings to the HCFA, but the findings are subject to judicial scrutiny:

> The plain language of federal Medicaid law mandates the State Medicaid Agency, *at a minimum,* to make "findings" which identify and determine (1) efficiently and economically operated hospitals; (2) the costs that must be incurred by such hospitals; and, (3) payment rates which are reasonable and adequate to

meet the reasonable costs of the state's efficiently and economically operated hospitals.

*AMISUB (PSL), Inc. v. Colorado Dep't of Social Services*, 879 F.2d 789, 796 (10th Cir.1989), *cert. denied, Colorado Dep't of Social Services v. AMISUB*, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990) (emphasis in original).

In *Pinnacle*, the Second Circuit described this standard as a duty to "make findings which establish a nexus between the costs of operating efficient and economic ... facilities and the proposed reimbursement rate under the state plan." *Pinnacle*, 928 F.2d at 1314. The *Pinnacle* court went on to note that "it is an absolute necessity that such findings be made," and that "the findings must be correct, i.e. they must show that the rates are reasonable and adequate to meet the costs of efficiently and economically operated facilities." *Pinnacle*, 928 F.2d at 1314. The logic of judicial review is obvious. As the Supreme Court noted in *Wilder*, "[i]t would make little sense for Congress to require a state to make findings without requiring those findings to be correct." *Wilder*, 110 S.Ct. at 2520.

Plaintiffs note that it is difficult for this court to make a determination as to the adequacy of Connecticut's annual findings when the record is devoid of evidence as to what those findings are. Taking the Plaintiffs well-pleaded allegations as true, the findings made by Connecticut are insufficient under the Act. This opinion has, as set forth above, rejected the argument that Connecticut is making reimbursement at the Medicare reasonable cost principal rate, and therefore is in compliance with the Boren Amendment as a matter of law.

As to the determination by the Magistrate Judge that any violations of the Act by Connecticut are mere "procedural noncompliance," the Supreme court in *Wilder* rejected the argument that the requirements of findings and assurances are procedural only "because it would render the statutory requirements of findings and assurances, and thus the entire reimburse-

**52**

ment provision, entirely meaningless." *Wilder*, 110 S.Ct. at 2519–20. In *Pinnacle*, the Second Circuit determined that New York State's plan violated the procedural requirements of the Boren Amendment, and held the plan null and void before reaching the substantive issues. *See Pinnacle*, 928 F.2d at 1316–17.

 This court may properly examine Connecticut's annual findings to determine if they comply with the Act. Because there are no findings as yet included in the record, it is improper for the court to dismiss Count II. As to the portion of Count II which alleges that Connecticut has failed to make proper assurances to the HCFA, the court finds that the record is insufficiently developed to warrant the dismissal of this claim as well.

### II. Constitutional Violations

C) Counts III and IV

 In Count III of the Complaint, plaintiffs allege that the defendants' implementation of the DIM reimbursement plan deprives the hospitals of property without due process of law. The Magistrate Judge again determined that because plaintiffs have not availed themselves of the administrative proceedings established under Connecticut law, this claim should be dismissed. Specifically, the Magistrate Judge held that the DIM has promulgated regulations pursuant to Conn.Gen.Stat. § 17–311 providing for an appeal process for hospitals challenging the DIM rate system. *See* Conn. Agencies Regs. § 17–311–101.

As noted above, the Supreme Court has held that the availability of limited state administrative remedies does not foreclose suit in federal court. *Wilder*, 110 S.Ct. at 2524–25. Plaintiffs have no duty to demonstrate exhaustion of state remedies, and their failure to do so does not mandate dismissal of their constitutional claims.

In Count IV of the Complaint, Plaintiffs allege the defendants have violated 42 U.S.C. § 1983. The court will only note that the Supreme Court has held that this right of action may be brought without

resort to state administrative remedies. *Wilder*, 110 S.Ct. at 2524–25.

### CONCLUSION

For the above reasons, the court declines to affirm the opinion of the Magistrate Judge. Defendants' motion to dismiss is DENIED.

SO ORDERED.