

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

May 29, 1998

William R. Archer III, M.D.
Commissioner of Health
Texas Department of Health
1100 West 49th Street
Austin, Texas 78756-3199

Opinion No. DM-477

Re: Whether the Texas Department of Health may allocate medicaid provider payments to satisfy a medicaid provider's child-support obligation (RQ-1046)

Dear Commissioner Archer:

Human Resources Code section 32.036 stipulates that a medical assistance (medicaid) provider payment may be paid only to the service provider unless the provider has assigned the payment consistently with 42 U.S.C. § 1396a(a)(32). Under the federal law, a state may pay a medicaid provider's assignee if the assignee is a governmental agency or if the assignment was established in accordance with a court order. You ask whether the Texas Department of Health ("TDH") may "garnish" a service provider's medicaid payment to satisfy the provider's child-support obligation. By "garnish," we understand you to mean "allocate" the payment in accordance with an assignment authorized by 42 U.S.C. § 1396a(a)(32). We conclude the Department of Health may withhold all or part of the payment if the provider has assigned medicaid payments to a governmental agency or if the assignment is established by or in accordance with a court order issued by a court of competent jurisdiction.[1] We do not determine in any particular case whether payments have been assigned as Human Resources Code section 32.036(c) and 42 U.S.C. § 1396a(a)(32)(B) require.

We understand the TDH is the operating agency for the State's medical assistance program.[2] As such, the TDH pays service providers for medical assistance services rendered to medicaid recipients.[3]

We conclude, in answer to your question, that Human Resources Code section 32.036 permits the TDH to withhold some or all of a medical assistance payment due a service provider

---

[1]Your question does not implicate article XVI, section 28 of the Texas Constitution, which generally prohibits garnishing wages. Even assuming medicaid provider payments are "wages" for purposes of article XVI, section 28, that section excepts garnishment "for the enforcement of court-ordered child support payments."

[2]See generally Hum. Res. Code ch. 32 (creating program to provide medical assistance on behalf of needy individuals). The medical assistance program is commonly known as "Medicaid."

[3]See id. § 32.029.

to satisfy the provider's child-support obligation if the assignment satisfies 42 U.S.C. § 1396a(a)(32)(B). Human Resources Code section 32.036 generally prohibits the assignment or garnishment of payments to medicaid providers, unless the assignment is permitted under 42 U.S.C. § 1396a(a)(32):

> (a) Neither medical assistance nor payments to providers of medical assistance under this chapter are transferable or assignable at law or in equity.

> (b) No money paid or payable under the provisions of this chapter is subject to . . . garnishment . . . .

> (c) This section does not apply to the extent that it conflicts with the Social Security Act (42 U.S.C. Section 1396a(a)(32)).

The United States Code requires a state plan for medical assistance to permit the assignment of medicaid provider payments if the assignment is to a governmental agency or if a court order establishes or orders the assignment (or in other specific circumstances not relevant here):

> A State plan for medical assistance must—

> . . . .

> (32) provide that no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or service, under an assignment or power or attorney or otherwise; except that—

> (A) . . . .

> (B) nothing in this paragraph shall be construed (i) to prevent the making of such a payment in accordance with an assignment from the person or institution providing the care or service involved if such assignment is made to a governmental agency or entity or is established by or pursuant to the order of a court of competent jurisdiction, or (ii) . . . .[4]

A state's failure to permit assignments allowed by federal law may lead to the loss of federal funding.[5]

---

[4] 42 U.S.C. § 1396a(a)(32).

[5] *See* 42 U.S.C. § 1396 (authorizing federal government to appropriate funds for state medical assistance plans that United States Secretary of Health and Human Services has approved); *Connecticut Hosp. Ass'n v. O'Neill*, 793 F.

(continued...)

The legislature added subsection (c) in 1997 to clear up an apparent conflict with 42 U.S.C. § 1396a(a)(32).[6] Prior to the 1997 amendment, a court might apply section 32.036 and 42 U.S.C. § 1396a(a)(32) and reach conflicting results. In *In re Missionary Baptist Foundation of America, Inc. v. First National Bank*[7] the United States Court of Appeals, Fifth Circuit, compared the pre-1997 version of Human Resources Code section 32.036 with 42 U.S.C. § 1396a(a)(32) and concluded that "cases decided under them could . . . come out differently, depending upon which applied."[8] According to the court, the state statute "is broader and more rigid in its prohibitions."[9] Arguably, before the 1997 amendment, Human Resources Code section 32.036 absolutely prohibited paying medicaid service provider payments to any assignee of the service provider. By contrast, 42 U.S.C. § 1396a(a)(32) permits payments to certain assignees. Since the 1997 amendment became effective, however, the state law comports with 42 U.S.C. § 1396a(a)(32).

Whether a particular transfer is an assignment that satisfies 42 U.S.C. § 1396a(a)(32)(B) is, of course, a fact question that cannot be resolved in the opinion process.[10] The transfer first must be a valid assignment.[11] If it is, the assignment must be either made to a governmental agency or entity or established by or in accordance with the order of a court of competent jurisdiction. In the case of child-support payments, for instance, the assignment may be to a governmental entity (the

---

[5](...continued)
Supp. 47, 49 (D. Conn. 1992) (stating that state may choose whether to participate in Medicaid program under Social Security Act, 42 U.S.C. §§ 1396-1396v, but if state chooses to participate, it must comply with all federal statutory and regulatory requirements); *see also Texas Dep't of Human Servs. v. Christian Care Ctrs., Inc.*, 826 S.W.2d 715, 717 (Tex. App.--Austin 1992, writ denied) (stating that Medicaid program requires state and federal governments to cooperate to ensure that Texas qualifies for federal matching funds).

[6]*See* Act of May 7, 1997, 75th Leg., R.S., ch. 216, § 1, 1997 Tex. Gen. Laws 1086, 1086; *see also* Senate Comm. on Health & Human Servs., Bill Analysis, S.B. 614, 75th Leg., R.S. (1997); House Comm. on Public Health, Bill Analysis, H.B. 1634, 75th Leg., R.S. (1997) (companion bill to S.B. 614).

[7]796 F.2d 752 (5th Cir. 1986).

[8]*Id.* at 758; *see also* Senate Comm. on Health & Human Servs., Bill Analysis, S.B. 614, 75th Leg., R.S. (1997) (noting Fifth Circuit decision that conflict between state law and federal law could result in different outcomes); House Comm. on Public Health, Bill Analysis, H.B. 1634, 75th Leg., R.S. (1997) (companion bill to S.B. 614) (same).

[9]*In re Missionary Baptist Found. of America*, 796 F.2d at 758.

[10]*See, e.g.*, Attorney General Opinions DM-98 (1992) at 3, H-56 (1973) at 3, M-187 (1968) at 3, O-2911 (1940) at 2.

[11]An assignment is a contract between two parties to transfer a property, right, or interest from one party, the assignor, to the other party, the assignee. *See University of Tex. Med. Branch v. Allan*, 777 S.W.2d 450, 452-53 (Tex. App.--Houston [14th Dist.] 1989, no writ). *See generally* 7 TEX. JUR. 3D *Assignments* §§ 23-31 (1997) (discussing requisites and validity of assignments).

state's Title IV-D agency or the "local registry")[12] or it may be established by or in accordance with an order of the court with jurisdiction over the child-support matter.[13]

This result is entirely consistent with the purpose of the federal law. The United States Congress adopted what is now subdivision (32)(A) of 42 U.S.C. § 1396a(a) in 1972[14] and adopted the substance of what is now subdivision (32)(B) five years later.[15] The House Interstate and Foreign Commerce Committee explained that the purpose of both the 1972 and 1977 amendments to the Social Security Act was to stop the assignment of medicaid receivables to "factoring" agencies, which purchased medicaid accounts receivable at a discount and allegedly sent the government inflated bills:

> In 1972, the Congress took action to stop a practice under which some physicians and other persons providing services under medicare and medicaid reassigned their medicare and medicaid receivables to other organizations or groups. Under the conditions of these reassignments, the organizations or groups purchased the receivables for a percentage of their face value, submitted claims and received payments in their name. By 1972, it had become apparent that such reassignments were a significant source of incorrect and inflated claims for services paid by medicare and medicaid. In addition, cases of fraudulent billings by collection agencies and substantial overpayments to these so-called "factoring" agencies were also found.

> Congress concluded that such arrangements were not in the best interest of the government or the beneficiaries served by the medicare and medicaid programs. The Social Security Amendments of 1972, . . . therefore, included a prohibition against the payment for covered services to anyone other than the patient, his physician, or other person who provided the service, unless the physician or other person is required as a condition of his employment to turn his fees over to his employer, or unless the physician or other person has an arrangement with a facility under which the facility bills for such services.

> Despite these efforts to stop factoring of medicare and medicaid bills, some practitioners and other persons have circumvented the intent of the law by use of a power of attorney. The use of a power of attorney allows the factoring company to receive the medicare or medicaid payment in the name

---

[12]See Fam. Code §§ 158.103(7), .203(a).

[13]See id. §§ 158.001, .011, .105.

[14]See Social Security Amendments of 1972, Pub. L. No. 92-603, § 236(b), 86 Stat. 1329, 1415 (1972).

[15]See Medicare-Medicaid Antifraud and Abuse Amendments, Pub. L. No. 95-142, § 2(a)(3), 91 Stat. 1176 (1977).

of the physician, thus allowing the continuation of program abuses which *factoring activities were shown to produce in the past.*

The bill would modify existing law to preclude the use of a power of attorney as a device for reassignments of benefits under medicare and medicaid, other than an assignment to a governmental entity or establishment, or an assignment established by or pursuant to the order of a court of competent jurisdiction. . . .[16]

Assigning all or part of a medical assistance payment to pay a child-support obligation or arrearage is, in our opinion, vastly different from the factoring arrangements the federal law is designed to preclude.

Although you ask only about the TDH's authority to withhold some or all of the medical assistance payment under Human Resources Code section 32.036, we believe your question raises a second issue. Assuming that a court of competent jurisdiction has issued an order under Family Code section 154.007 or 158.001 directing an "employer" to withhold a percentage of a child-support payor's disposable "earnings," is the TDH subject to it when paying medical assistance payments to service providers? We conclude that it is.

First, we conclude that TDH is an *employer* in the context of Family Code chapter 158. Family Code sections 154.007 and 158.001 require a court, in any proceeding ordering, modifying, or enforcing child-support payments, to direct a child-support obligor's employer to withhold up to fifty percent of the obligor's disposable earnings to pay child-support obligations and any arrearage.[17] Family Code section 101.012 defines *employer* for chapter 158, and the definition encompasses relationships other than a typical "employment" relationship: "'Employer' means a person, corporation, partnership, workers' compensation insurance carrier, governmental entity, the United States, or any other entity that pays or owes earnings to an individual. . . ." Assuming for the moment that medicaid payments to a service provider are earnings, the TDH is a governmental entity that pays earnings to an individual.

Second, we conclude that medicaid payments to service providers are *earnings* in the context of Family Code chapter 158. The term *earnings* is defined, for purposes of chapter 158, in Family

---

[16]H.R. REP. NO. 393(II), 95th Cong., 1st Sess. 48-49 (1977), *reprinted in* 1977 U.S.C. 3039, 3051-52; *see also id.* at 1, *reprinted in* 1977 U.S.C. 3039, 3040; *In re Missionary Baptist Found. of America v. First Nat'l Bank,* 796 F.2d 752, 757 n.6 (5th Cir. 1986).

[17]*See also* Fam. Code § 158.009 (establishing maximum amount that may be withheld from earnings). Family Code sections 154.007 and 158.001 authorize the state's "Title IV-D agency," which is the Office of the Attorney General, *see id.* § 231.001; *see also id.* § 231.0011, to issue orders directing an employer to withhold a percentage of a child-support obligor's earnings. We do not consider in this opinion whether an order of the state's Title IV-D agency is a court order for purposes of 42 U.S.C. § 1396a(a)(32)(B).

Code section 101.011. Like the applicable definition of *employer*, the definition of *earnings* is broad, encompassing more than hourly wages or annual salary:

"Earnings" means a payment to or due an individual, regardless of source and how denominated. The term includes a periodic or lump-sum payment for:

(1) wages, salary, compensation received as an independent contractor, overtime pay, severance pay, commission, bonus, and interest income;

(2) payments made under a pension, an annuity, workers' compensation, and a disability or retirement program; and

(3) unemployment benefits.

Certainly, a payment to a medical assistance provider for professional services he or she rendered to a medicaid recipient is "a payment to or due" the provider.

## S U M M A R Y

Consistent with Human Resources Code section 32.036, the Texas Department of Health may allocate all or part of a service provider's medical assistance payments to satisfy the provider's child-support obligation if the service provider has assigned the payment to a government agency or if the assignment was established by or in compliance with a court order issued by a court of competent jurisdiction.

The Department of Health is an "employer" subject to a court order issued under Family Code section 154.007 or 158.001 when it pays medical assistance payments to a service provider. Additionally, medicaid payments are "earnings" subject to such a court order.

Yours very truly,

D A N  M O R A L E S
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General