Rodger Lee FERDINAND, Individually, and as guardian, and on behalf of his son, Randall Lee Ferdinand, and on behalf of all others similarly situated, Appellants,

v.

The CITY OF FAIRBANKS, Earnest G. Carter, Richard J. Greul, Ralph R. Migliaccio, Robert G. Parsons, Joseph D. Marshall and James W. Rolle, Individually and in their official capacity as Councilmen of the City of Fairbanks, the Public Utilities Board of Fairbanks, consisting of Frank Killeen, Robert Boswell, Mike Mikell, Morton Schierhorn, and Robert Hanson, and their successors, Individually and in their official capacity as members of the Public Utilities Board of Fairbanks, Harold Gillam, Individually and in his official capacity as Mayor of the City of Fairbanks, Edward L. Martin, Individually and in his official capacity as City Manager of the City of Fairbanks, Bob Burg, Individually and in his official capacity as Acting General Manager of the Municipal Utilities System of Fairbanks, Donnie Arne, Individually and in her official capacity as an employee of the Municipal Utilities System of Fairbanks, and "John Doe," Individually and in his capacity as an employee of the Municipal Utilities System of Fairbanks, Appellees.

No. 3724.

Supreme Court of Alaska.

Aug. 24, 1979.

Henry C. Remm, Jr., Alaska Legal Services, Fairbanks, for appellants.

E. John Athens, Jr., Johnson, Christenson & Glass, Fairbanks, for appellees.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

CONNOR, Justice.

■ This case presents the narrow question of whether the court below was correct in concluding that, as a matter of law, an award of fees under the provisions of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, must be limited to partial rather than full compensation.[1]

In the winter of 1977, the Fairbanks Municipal Utilities Service (M.U.S.) cut off electrical power to Rodger Ferdinand's residence because of non-payment of a disputed bill. Ferdinand sued on behalf of himself

1. We reject the City of Fairbanks' bare assertion that this court does not have jurisdiction to hear the appeal with regard to it. The apparent claim of sovereign immunity is without merit. In *Monnell v. Department of Social Services of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court overruled that portion of *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which held that local governments are wholly immune from suit under 42 U.S.C. § 1983: "Our analysis . . . compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690, 98 S.Ct. at 2035, 2036, 56 L.Ed.2d at 635. (emphasis in original; footnotes omitted).

In any event, the immunity envisioned in *Monroe v. Pape, supra,* to keep safe the coffers of a municipality from civil liability damages, and extended in *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), to suits for injunctive relief, was, as the Court acknowledged, specifically rejected by Congress in enacting the Civil Rights Attorney's Fees Award Act of 1976:

[D]efendants in these cases are often State or local *bodies* or State or local officials. In such cases it is intended that the attorneys'

fees, like other items of costs, will be collected either directly from the official, *in his official capacity,* from funds of his agency or under his control, or *from the State or local government (whether or not the agency or government is named [as a] party).* S.Rep. No. 94–1011, p. 5 (1976) (emphasis added; footnotes omitted.)

*Monell v. Department of Social Services of New York,* 436 U.S. at 699, 98 S.Ct. at 2040, 56 L.Ed.2d at 640–41.

That Congress has the power under § 5 of the fourteenth amendment to use the device of attorney's fees to encourage civil rights enforcement was made clear in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). In upholding an award of attorney's fees against a state official under Title VII, the court reasoned that measures taken by Congress to enforce the fourteenth amendment are not subject to the defense of sovereign immunity, since the states voluntarily surrendered their sovereign rights when they ratified the amendment. 427 U.S. at 456, 96 S.Ct. at 2671, 49 L.Ed.2d 621–22. Since the Attorney's Fees Act is designed to effect the enforcement of fourteenth amendment rights, a statutory fee award under 42 U.S.C. § 1988 is not barred by the eleventh amendment. This holding was re-affirmed last term in *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Under *Monell, supra,* that logic is extended to bar a claim of sovereign immunity asserted by a municipality.

and others similarly situated, alleging, inter alia, that the municipality had terminated his electrical service without adequate due process procedures to which he was entitled under the fourteenth amendment of the United States Constitution, 42 U.S.C. § 1983, and article I, section 7, of the Constitution of the State of Alaska. He was represented by the Alaska Legal Services Corporation. Within hours after the suit was filed, M.U.S. reinstated electric service.

Negotiations commenced immediately [2] thereafter and the parties entered into a stipulation for settlement wherein M.U.S. agreed to afford pretermination notice and an opportunity for a hearing prior to cutting off electrical service to any non-commercial subscriber. In addition, the settlement provided that a proposed ordinance amending the Fairbanks General Code of Ordinances to incorporate the above due process protections be presented to the Fairbanks Public Utilities Board and the City Council at their next regularly scheduled meetings. The ordinance was adopted three weeks later. Final judgment, constituting a resolution of all issues except attorney's fees,[3] was entered six months after the complaint was filed.

2. Throughout the negotiations, the named plaintiff and members of a class conditionally certified were protected by an agreement of counsel whereby unnamed plaintiffs whose electric services had been terminated after a date certain were notified by certified mail, at M.U.S.' expense, that their service would be re-instated upon request; prospective class members whose service had not yet been terminated were given written notice of the availability of special payment plans for past due accounts, and personnel at the M.U.S. were instructed to inform customers of their right to a pretermination hearing.

3. The final judgment incorporated the terms of the stipulation which included the following language:
 The entry of a Final Judgment in this cause shall not preclude the timely application by plaintiffs for costs and reasonable attorneys' fees herein.

4. The motion was supported by a bill of costs, affidavits as to the prevailing rates of counsel fees in civil rights cases in Fairbanks, and a summary of hours spent on the litigation.

The plaintiffs moved for costs and attorney's fees,[4] pursuant to the provisions of the 1976 Civil Rights Attorney's Fees Awards Act,[5] or, in the alternative, Rules 79 and 82[6] of the Alaska Rules of Civil Procedure. After a hearing on the motion, the court awarded attorney's fees in the sum of $3,500.00, approximately one-half of the amount claimed in plaintiffs' bill of costs. While the court found that plaintiffs were the prevailing parties in a civil rights action and, therefore, entitled to be compensated under the Civil Rights Attorney's Fees Awards Act of 1976, it held that the amount to be awarded "rests in the sound discretion of the Court," and identified two factors as justification for the reduction from the amount claimed. First, the court apparently deducted from the total hours claimed that portion of the time which was devoted to the litigation of the attorney's fees question. Second, the court found that the hourly rate of compensation claimed was "an unreasonable amount under the circumstances of this case in view of the fact that no trial was ever held on the issues in the matter and the case was settled out of court." Appellants challenge the award of partial rather than full fees.

5. The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides in relevant part:
 In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

6. Rule 82 provides in relevant part:
 *Attorney's Fees*
 (a) Allowance to Prevailing Party as Costs.
 (1)

 Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount.

The diminution of the award was predicated on the court's "elect[ion] to follow the tenets of the Alaska Supreme Court which suggest the award of partial rather than full attorney's fees."

 This is the correct approach to be applied in determining an award of attorney's fees under Rule 82(a) of the Alaska Rules of Civil Procedure.[7] It is not, however, applicable to fee awards under the federal act. We analyzed the essential distinctions between these attorney fee provisions in our recent opinion in *Tobeluk v. Lind*, 589 P.2d 873 (Alaska 1979), where we held that the federal act applies to civil rights actions in state court:[8]

> Despite the . . . similarities, the two fee award provisions are based on dissimilar underlying policies. The purpose of Rule 82 is to partially compensate a prevailing party for the expenses incurred in winning his case. It is not intended as a vehicle for accomplishing anything other than providing compensation where it is justified. In comparison, the explicit purpose of the fee shifting provision in the federal statute, 42 U.S.C. § 1988, is to encourage meritorious claims which might not otherwise be brought.

*Tobeluk v. Lind*, 589 P.2d at 876 (citations and footnotes omitted). While the award of attorney's fees under both the Alaska Rule and the federal statute remains within the trial court's discretion, that discretion is narrowly limited when attorney's fees are awarded pursuant to the federal act, and will be reviewed on appeal in light of federal rather than Alaska law.[9]

 Since the trial court erred in assuming that state rather than federal guidelines applied in ascertaining an appropriate fee award under 42 U.S.C. § 1988, we must reverse and remand for a new fee determination. For the court's guidance on remand, we note that the federal act envisions no subtraction from a fee award merely because the litigation is terminated in whole or in part by consent decree or stipulation.[10] *Brown v. Culpepper*, 559 F.2d

---

7. *See, e. g., Malvo v. J. C. Penney Co.*, 512 P.2d 575, 587 (Alaska 1973); *DeWitt v. Liberty Leasing Co. of Alaska*, 499 P.2d 599, 602 (Alaska 1972), *quoting Preferred Gen. Agency of Alaska, Inc. v. Raffetto*, 391 P.2d 951, 954 (Alaska 1964).

8. As the United States Supreme Court has recently noted: "The Act itself could not be broader. It applies to 'any' action brought to enforce certain civil rights laws." *Hutto v. Finney*, 437 U.S. 678, 694, 98 S.Ct. 2565, 2575, 57 L.Ed.2d 522, 536 (1978).

9. The trial judge's discretion in awarding attorney's fees under the federal act is canalized within the banks sculpted by the legislative history:

> It is intended that the amount of fees awarded under S. 2278 be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature. The appropriate standards, see *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), are correctly applied in such cases as *Stanford Daily v. Zurcher*, 64 F.R.D. 680 (N.D.Cal.1974); and *Swann v. Charlotte-Mecklenburg Board of Education*, 66 F.R.D. 483 (W.D.N.C.1975). These cases have resulted in fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys. In computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, "for all time reasonably expended on a matter." *Davis, supra; Stanford Daily, supra*, at 684.

S.Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin. News, pp. 5908, 5913. *Accord*, H.Rep. No. 1558, 94th Cong., 2d Sess. 8, 9 (1976).

By contrast, we have consistently held that both the determination of a "prevailing party" status and the award of costs and fees under the Alaska Rule are committed to the broad discretion of the trial court. *First Nat'l Bank of Fairbanks v. Enzler*, 537 P.2d 517, 525–26 (Alaska 1975); *Adoption of V. M. C.*, 528 P.2d 788, 795 (Alaska 1974); *DeWitt v. Liberty Leasing Co. of Alaska*, 499 P.2d at 601; *Owen Jones & Sons, Inc. v. C. R. Lewis Co.*, 497 P.2d 312, 314 (Alaska 1972).

10. This issue is addressed specifically in legislative history:

> The phrase "prevailing party" is not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits. It would also include a litigant who succeeds even if the case is concluded prior to a full evidentiary hearing before a judge or jury. If the litigation terminates by consent decree, for example, it would be proper to award counsel fees. *Incarcerated Men of Allen County v. Fair*, 507 F.2d 281 (6th Cir.

274, 277 (5th Cir. 1977); *Regalado v. Johnson,* 79 F.R.D. 447, 452 (E.D.Ill.1978); *Buckton v. National Collegiate Athletic Association,* 436 F.Supp. 1258 (D.Mass.1977); *Schmidt v. Schubert,* 433 F.Supp. 1115 (E.D. Wis.1977); *Parker v. Matthews,* 411 F.Supp. 1059 (D.D.C.1976); *Davis v. Reed,* 72 F.R.D. 644, 645 (N.D.Miss.1976).

■ Furthermore, a number of courts have recognized the right to recover costs incurred in litigating the fee issue both at the trial court level and on appeal.[11] *Prandini v. National Tea Co.,* 585 F.2d 47, 54 (3d Cir. 1978); *Kimbrough v. Arkansas Activities Association,* 574 F.2d 423, 427 (8th Cir. 1978); *Wharton v. Knefel,* 562 F.2d 550, 558 (8th Cir. 1978); *Williams v. Anderson,* 562 F.2d 1081, 1102 (8th Cir. 1977); *Rainey v. Jackson State College,* 551 F.2d 672, 677 (5th Cir. 1977); *Finney v. Hutto,* 548 F.2d

740, 743 (8th Cir. 1977), *aff'd,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

■ Attorney's fees will be awarded to appellants for prosecuting this appeal pursuant to Appellate Rule 29(d) upon issuance of a mandate.

■ Finally, the lower court should articulate the reasoning it employs on remand, in the event that further appellate review is required.[12]

---

1974); *Parker v. Matthews,* 411 F.Supp. 1059 (D.D.C.1976); *Aspira of New York, Inc. v. Board of Education of City of New York,* 65 F.R.D. 541 (S.D.N.Y.1975). A "prevailing" party should not be penalized for seeking an out-of-court settlement, thus helping to lessen docket congestion. Similarly, after a complaint is filed, a defendant might voluntarily cease the unlawful practice. A court should still award fees even though it might conclude, as a matter of equity, that no formal relief, such as an injunction, is needed. *E. g. Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421 (8th Cir. 1970); *Brown v. Gaston County Dyeing Machine Co.,* 457 F.2d 1377 (4th Cir.), *cert. denied,* 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972); *see also Lea v. Cone Mills Corp.,* 438 F.2d 86 (4th Cir. 1971); *Evers v. Dwyer,* 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958).

H.Rep. No. 1558, 94th Cong., 2d Sess. 7 (1976). The Senate Committee Report is similar:

Moreover, for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief. *Kopet v. Esquire Realty Co.,* 523 F.2d 1005 (2d Cir. 1975), and cases cited therein; *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421 (8th Cir. 1970); *Richards v. Griffith Rubber Mills,* 300 F.Supp. 338 (D.Or.1969); *Thomas v. Honey-*

*brook Mines, Inc.,* 428 F.2d 981 (3d Cir. 1970); *Aspira of New York, Inc. v. Board of Education of City of New York,* 65 F.R.D. 541 (S.D.N.Y.1975).

S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin. News, pp. 5912–13.

11. We are of the view that the scope of the federal act would embrace an award of attorney's fees incurred in any litigation which is necessary to secure the fees from the state.

12. We cannot, however, agree with appellants that the federal act *requires* an award of the full amount of fees claimed, but only those fees that are reasonable. On the issue of whether the public interest was advanced by the instant case, we note that last term in *Memphis Light, Gas and Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), the United States Supreme Court, in holding that a public utility may not terminate service for non-payment of disputed bills without affording due process notice and a hearing, recognized that "[u]tility service is a necessity of modern life; indeed the discontinuance of water or heating for even short periods of time may threaten health or safety." *See also McGhee v. City of Pensacola,* 47 U.S.L.W. 2605 (N.D.Fla., Feb. 23, 1979).