Seveller McNEIL–TERRY, et al., Respondents,

v.

Steve ROLING, Director, State of Missouri, Department of Social Services, Division of Medical Services, Appellant.

No. ED 83731.

Missouri Court of Appeals, Eastern District, Division Three.

June 29, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 10, 2004.

Application for Transfer Denied Sept. 28, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen., Ronald Molteni & Denise, LeAnne Thomas, St. Louis, MO, for appellants.

Thomas Kennedy & Deborah Greider, Alton, IL, John Ammann & Barbara Gilchrist, St. Louis, MO, for respondents.

WILLIAM H. CRANDALL, JR., Judge.

Defendant, Steve Roling, Director, Missouri Department of Social Services, Division of Medical Services (Division), appeals from the judgment of the trial court declaring that the Division's actions in suspending or terminating the State of Missouri's Medicaid adult dental services program, by emergency rule or other non-statutory means, violated section 208.152.1(7) RSMo 2000 and permanently enjoining the Division from re-enacting an emergency rule or implementing a non-statutory policy to suspend or eliminate Missouri's Medicaid adult dental services program. We affirm.

The case was submitted to the trial court on stipulated facts. Those facts established that Missouri, through the Division, provided dental benefits to Medicaid-eligible adults. Prior to July 1, 2002, the Division served approximately 300,000 persons in its Medicaid adult dental services program. On June 26, 2002, the governor signed Missouri's budget for 2003, House Bill 1111, which eliminated funding for Medicaid adult dental services, effective July 1, 2002, but did not modify or amend section 208.152. On June 27, 2002, the Division filed an emergency amendment to 13 CSR 70–35.010, effective July 2, 2002, which provided in part that only dentures and treatment of trauma to the mouth or teeth as a result of injury were covered dental services for Medicaid-eligible adults. The Division sent notices to dental care providers and to Medicaid recipients, including plaintiffs, Seveller McNeil–Terry, Betty Brent, and Lloyd Smith, informing them that as of July 2, 2002, general adult dental services would no longer be covered. But, the Division neither established nor included in the notices any hearing procedures for Medicaid-eligible adults to challenge the decision to terminate the dental services. After July 2, 2002, Medicaid-eligible adults were not able to obtain dental services through the Medicaid program until August 21, 2002, when the court issued a preliminary injunction, re-instating such dental services. On January 2, 2003, the Division published an order terminating the emergency amendment to 13 CSR 70–35.010. On June 30, 2003, the governor signed Missouri's budget for 2004, House Bill 11, which again eliminated funding for dental services for Medicaid-eligible adults, effective July 1, 2003. Again, there was no change to section 208.152.1.

Plaintiffs were Medicaid recipients. McNeil–Terry was on a list to obtain a kidney transplant and required a dental clearance to remain on the list. Brent had severe tooth pain, an infected mouth, and several cavities. Smith, who was developmentally disabled, received 10 hours per week from Life Skills Foundation to help him with his daily life activities. If Medicaid dental services were reduced, he would have to use part of that time with Life Skills Foundation to help him find a den-

tist to treat him for little or no cost and to help him budget and save for his dental care. Plaintiffs brought the present action, seeking a declaratory judgment that the Division's termination of dental services to Medicaid-eligible adults was improper and also seeking a preliminary and permanent injunction to enjoin the Division from terminating such dental services. In August 2002, the court granted a preliminary injunction to plaintiffs. In September 2003, the trial court entered declaratory judgment in favor of plaintiffs, finding that the Division's action in suspending or terminating Missouri's Medicaid adult dental services program, by emergency rule or other non-statutory means, violated section 208.152.1(7). The court also entered a permanent injunction, enjoining the Division from re-enacting any emergency amendment to 13 CSR 70–35.010 or implementing any non-statutory policy to suspend or eliminate such dental program. The Division appeals.

Before addressing the other issues raised on appeal, we consider the Division's third point, which raises the issue of whether this case is moot. The Division claims that it terminated its emergency amendment to 13 CSR 70–35.010 and allowed the regular rulemaking proposed amendment to lapse by operation of law prior to the court's ruling on the declaratory judgment or permanent injunction. Thus, the controversy is no longer justiciable.

■■■ The threshold question in appellate review of a controversy is the mootness of the controversy. *Kinsky v. Steiger*, 109 S.W.3d 194, 195 (Mo.App. E.D. 2003). A moot case raises the issue of justiciability and courts may dismiss it sua sponte. *Id.* A question is justiciable only where the judgment will declare a fixed right and accomplish a useful purpose. *Id.* When an event occurs that makes a court's

decision unnecessary or makes the court's granting of relief impossible, the case is moot. *Id.*

■■■ Plaintiffs argue that this case falls within an exception to the mootness doctrine, which exception bestows discretionary jurisdiction on the appellate court. Missouri recognizes two narrow exceptions to the mootness doctrine. *Id.* at 196. The first exception occurs if a case becomes moot after argument and submission. *Id.* The second exception occurs if a case presents an issue that (1) is of general public interest, (2) will recur, and (3) will evade appellate review in future live controversies. *Id.* If an exception applies, then dismissal is within the discretion of the appellate court. *Id.*

■■ This case falls within the "public interest" exception to the mootness doctrine. In light of the large numbers of persons (about 300,000) previously served by the Medicaid adult dental services program, the provision of benefits for dental services for Medicaid-eligible adults is of general public importance and interest. Based upon Missouri's 2003 and 2004 budgets that cut funding for dental care for Medicaid-eligible adults and the Division's actions in response to the budget cuts, the controversy is likely to recur. Lastly, the issue of the termination of Medicaid benefits for adult dental services will evade review in a future live controversy. Here, there is no live or even looming lawsuit concerning this same controversy. Thus, in the instant action, the public interest exception applies and the case is not moot. The Division's third point is denied.

Returning to the first point on appeal, the Division claims that the trial court erred when it found that the Division's actions in eliminating coverage for Medicaid adult dental services, by emergency rule or other non-statutory means, violated

section 208.152.1(7) and when it permanently enjoined the Division from eliminating the dental coverage by similar means in the future. The Division argues that section 208.153 RSMo 2000 expressly authorized it to determine the scope of the dental services program. Section 208.153.1 provided in relevant part: "Pursuant to and not inconsistent with the provisions of sections 208.151 and 208.152, the [Division] shall by rule and regulation define the reasonable costs, manner, extent, quantity, quality, charges and fees of medical assistance herein provided. . . ."

■■■■ The primary rule of statutory construction is to ascertain the intent of the legislature by giving words used in the statute their plain and ordinary meaning. *American Healthcare Management, Inc. v. Director of Revenue,* 984 S.W.2d 496, 498 (Mo. banc 1999). If the "statutory language is clear, unambiguous, and admits of only one meaning, there is no room for construction and the legislature is presumed to have intended what the statute says." *Corvera Abatement Technologies, Inc. v. Air Conservation Comm'n,* 973 S.W.2d 851, 858 (Mo. banc 1998).

■■■■ Medicaid is a cooperative program between the federal and state governments that assists states in providing health care to people who cannot afford it. *Cushion v. Dept. of PATH,* 174 Vt. 475, 807 A.2d 425, 428 (2002). Although states are not required to participate in Medicaid, those that do are required to comply with federal statutory and regulatory requirements. *Id.* Participating states must provide certain categories of medical service, and they may offer additional optional services. 42 U.S.C. section 1396a(a)(10) (defining "medical assistance" to include both required and optional services). The states are given broad discretion to determine the extent of the medical services they offer. *Cushion,* 807 A.2d at 428.

But, once the state opts to provide an optional service, it is bound to act in compliance with the Medicaid Act and applicable regulations in the implementation of those services. *Id.* Specifically, for each service that the state provides, coverage "must be sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. section 440.230(b).

Dental services are one of the optional services that a participating state may choose to provide. 42 U.S.C. section 1396d(a)(10). "Dental services" are defined as the "diagnostic, preventive, or corrective procedures provided by or under the supervision of a dentist." 42 C.F.R. section 440.100(a). The federal purpose, according to the 42 C.F.R. section 440.100(a), includes the treatment of the "teeth and associated structures of the oral cavity" and of "[d]isease, injury, or impairment that may affect the oral or general health of the recipient." 42 C.F.R. section 440.100(a)(1) & (2).

Missouri elected to provide dental services pursuant to section 208.152.1(7), which stated that benefit payments for adult dental services "shall be made on behalf of those eligible needy persons who are unable to provide for [them] in whole or in part." Thus, section 208.152.1(7) mandated the Division to provide dental services as part of its Medicaid program. Section 208.153 granted the Division the power to "define" such things as "reasonable costs, manner, extent, quantity, quality, charges and fees" for such dental services. The Division argues it merely exercised its authority to "define" the Medicaid dental services program when it enacted the emergency amendment to 13 CSR 70–35.010, which limited the covered dental services for Medicaid-eligible adults to dentures and treatment of mouth or teeth trauma.

We disagree. The Division, by rulemaking or other means, in essence eviscerated section 208.152.1(7), because it eliminated dental services for Medicaid-eligible adults except for dentures and mouth trauma. The Division did not comply with section 208.153 to "define" the extent of coverage for dental services under Medicaid, but rather it drastically curtailed the covered dental services for adults. Section 208.152.1(7) says that the State "shall" provide benefit payments for "dental services" for Medicaid recipients. "Dental services," as that term is generally understood, implies a full-range of diagnostic, preventive, and corrective procedures and treatments. Dentures and mouth trauma not only constitute a small fraction of general "dental services," but also comprise a relatively small part of the ordinary dental services required by adults. The mandate in section 208.152.1(7) for the Division to provide general "dental services" does not evince a corresponding intent for the Division to offer the minimum level of care in its dental services program for Medicaid-eligible adults.

The Division's reduction in dental services also conflicts with the federal Medicaid regulation requiring that services, including optional services like dental care, "be sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. section 440.230(b). *In Ledet v. Fischer,* 638 F.Supp. 1288, 1293 (M.D.La. 1986), the federal district court found that Louisiana's policy of providing eyeglasses only to post-cataract surgery patients was invalid because it conflicted with the federal Medicaid regulation requiring that the state's service be of sufficient amount, duration, and scope to reasonably achieve its purpose, where the purpose was to improve or aid vision. In *Cushion,* 807 A.2d at 430, the Vermont Supreme Court found that Vermont's outright prohibition on partial dentures violated federal law, because the categorical denial of coverage for partial dentures was a limitation on services not rationally related to the purpose of offering dental services. Similarly, the Division's limiting dental services to dentures and mouth trauma was not rationally related to the federal purpose of treating dental disease, injury, or impairment that may affect the oral or general health of Medicaid-eligible adults.

We also reject the Division's position that Missouri's budgetary constraints constitute sufficient justification for limitations on coverage for dental services. States may restrict coverage as a matter of fiscal necessity. *Cushion,* 807 A.2d at 429. The constraints, however, must not interfere with the purpose of offering that medical service in the first instance. *Id.* In light of Missouri's having chosen to offer dental services, it is obligated by federal law to offer sufficient coverage to achieve the federal purpose of dental service. *See id.* Fiscal limitations on coverage, however, have been allowed where the limitations are not inconsistent with medical necessity. *See Curtis v. Taylor,* 625 F.2d 645, 653 (C.A.Fla.1980) (state regulation limiting recipients to three physician office visits per month held a reasonable cost limitation where exceptions were made for emergency room visits and those with serious conditions). The Division's restricting dental services to dentures and mouth trauma is not consistent with the federal purpose to treat disease, injury, or impairment affecting the oral or general health of Medicaid-eligible adults.

In addition, the Division's argument that the right to receive dental services is subject to the appropriation of funds by the legislature is equally without merit. The Division posits that the legislature's failure to appropriate funds for dental services for

Medicaid-eligible adults conferred on the Division the right to limit such dental services. Yet, section 208.152.1(7) does not expressly state that the provision of dental services is subject to appropriation. In contrast, section 208.152.1(22) specifies that benefits for Medicaid-eligible adults shall be made for "[s]uch additional services as defined by the division of medical services to be furnished under waivers of federal statutory requirements as provided for and authorized by the federal Social Security Act ... *subject to appropriation by the general assembly.*" (Emphasis added). Thus, in the absence of express language making dental services subject to appropriation by the general assembly, section 208.152.1(7) cannot be read to subject dental services for Medicaid-eligible adults to such appropriation.

We recognize that the legislature could have amended or repealed section 208.152.1 to permit the reduction of covered dental services under Missouri's Medicaid program, but it has not done so. The Division exceeded its authority when it sought to drastically limit the covered dental services for Medicaid-eligible adults. The Division's first point is denied.

In its second point, the Division contends that the trial court's judgment finding that the limitation on dental services for Medicaid-eligible adults violated section 208.152.1(7) and enjoining the Division from doing so in the future violated the separation of powers doctrine as set forth in Article II, section 1 of the Missouri Constitution. That provision of the Missouri Constitution divides governmental power into three distinctive departments— legislative, executive, and judicial—and prohibits any person charged with the exercise of powers belonging to either of the other departments from exercising "any power properly belonging to either of the others, except in the instances in this con-

stitution expressly directed or permitted." Mo. Const. art. II, section 1. The Division posits that the trial court not only ignored the Division's authority to define the scope of adult dental services covered by Medicaid through rulemaking, but also interfered with the legislature's authority to appropriate funds and the executive branch's authority to spend those funds.

■■■■ At the heart of the separation of powers doctrine is the attempt to prevent the concentration of unchecked power in the hands of one branch of government. *Asbury v. Lombardi,* 846 S.W.2d 196, 200 (Mo. banc 1993). Article II, section 1 of the Missouri Constitution confines the power of the legislature to enacting laws and does not permit the legislature to execute laws already enacted. *Mo. Coalition for Env't v. Joint Comm'n on Admin. Rules,* 948 S.W.2d 125, 133 (Mo. banc 1997). Although the participation of the legislature ends once the legislation is enacted, the legislature may attempt to control the executive branch either by passing amendatory or supplemental legislation and presenting such legislation to the governor for signature or veto, or by the power of appropriation. *Id.* at 134.

■■■■ In the establishment and control of administrative agencies, the guiding principle is one of check, and not separation of powers. *State ex rel. Highway Comm'n v. Weinstein,* 322 S.W.2d 778, 785 (Mo. banc 1959). Article IV, section 16 of the Missouri Constitution recognizes the authority of "any board or other administrative agency of the executive department" to issue rules and regulations. *Mo. Coalition,* 948 S.W.2d at 133–134. Thus, promulgation of rules and regulations is an executive function. *Id.* at 133. The identifying badge of a modern administrative agency is the combination of judicial power (adjudication) with legislative power (rulemaking). *Weinstein,* 322 S.W.2d at 785.

But, agencies report to and draw their funds from the legislative body, the executive branch appoints the personnel of the agency, and the residual power of check resides with the judiciary. *Id.*

Although judicial power is mentioned in both Article V, section 1 and Article II, section 1 of the Missouri Constitution, its precise outlines are not defined. *Savannah R–III School Dist. v. Pub. School Ret. Sys.*, 950 S.W.2d 854, 859 (Mo. banc 1997). A declaratory judgment action, however, provides an appropriate method of determining controversies concerning the construction of statutes and powers and duties of governmental agencies, and courts have the right to declare void the rules and regulations of an administrative body. *State Tax Comm'n v. Administrative Hearing Comm'n*, 641 S.W.2d 69, 75 (Mo. banc 1982). Thus, the declaration of the validity or invalidity of statutes and administrative rules is purely a judicial function, because courts declare the law. *Id.*

In the instant action, the trial court entered declaratory judgment in favor of plaintiffs, finding that because section 208.152.1(7) created an entitlement to dental services for Missouri's Medicaid-eligible adults, the Division's actions in suspending or terminating the dental services program, by emergency rule or other non-statutory means, violated that statute. The trial court had the power not only to construe section 208.152.1(7), but also to determine that the Division's rule conflicted with that statute and to void the rule. In addition, the court could enjoin the Division from using similar means to terminate or suspend dental services in light of the fact that the Division could attempt to do so in the future. The court acted within its purview and its actions did not violate the separation of powers doctrine. The Division's second point is denied.

The judgment of the trial court is affirmed.[1]

CLIFFORD H. AHRENS, Presiding Judge, and LAWRENCE E. MOONEY, Judge: Concur.

---

1. Plaintiffs' motion for attorneys' fees incurred on appeal pursuant to section 536.050 RSMo 2000 is denied without prejudice to plaintiffs' right to pursue the motion before the trial court where a motion for attorneys' fees at trial is pending.