Elisha JENSEN, Appellant,

v.

MISSOURI DEPARTMENT OF HEALTH AND SENIOR SERVICES, Respondent.

No. WD 65158.

Missouri Court of Appeals,
Western District.

March 28, 2006.

Kimberly Jo Sternemann, Crystal City, MO, for Appellant.

Nicole L. Loethen, Jefferson City, MO, for Respondent.

Before VICTOR C. HOWARD, P.J., THOMAS H. NEWTON, and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Judge.

Ms. Elisha Jensen appeals a circuit court judgment affirming the decision of an administrative hearing officer that reduced Ms. Jensen's personal assistance services under Missouri's Medicaid plan from seven days a week to five days a week and, thus, affirmed a determination of the Division of Vocational Rehabilitation of the Department of Elementary and Secondary Education.[1] At issue is whether federal law preempts state program requirements in two respects. Because we find that the Department of Health and

---

1. The Department of Health and Senior Services (Department) was substituted as Respondent due to the legislature's enactment in 2005 of Senate Bill 539, which shifted administration of the Personal Care Assistance program at issue in this case from the Division of Vocational Rehabilitation to the Department. S.B. 539, 93d Gen. Assem., Reg. Sess. (Mo. 2005).

Senior Services (Department) has imposed restrictions on aid recipients not allowed by federal law, we hereby reverse.

Ms. Jensen, who is twenty-seven years old, lives with her parents. She sustained a traumatic closed head injury when she was ten that caused her current disability, which includes compromised vision, speech, short-term memory, and mobility.[2] Despite her disability, Ms. Jensen has been rehabilitating herself and, with a high school diploma, has taken some community-college courses. Ms. Jensen is eligible for Medicaid and has received services under an optional state program that is referred to in Missouri as Personal Care Assistance (PCA). §§ 178.661–.673 RSMo. (2000).[3] This program provides financial assistance for personal care services to benefit physically disabled individuals who are at least eighteen years old; able to direct their own care; are employed, ready for employment, or capable of living independently with personal care services; demonstrate financial need; and meet other criteria. The types of services provided under this program most often relate to the performance of personal care tasks such as eating, bathing, dressing, toileting, housework, laundry, meal preparation, transportation, grocery shopping, and medication and money management. Ms.

Jensen began receiving such services in 2001 and qualified for six hours of paid assistance, seven days a week. Her mother is paid under the PCA program as Ms. Jensen's personal attendant caregiver.

During an annual review in 2003, Ms. Jensen's services were reduced to five days a week because she did not document that it would be an "undue hardship" for her parents to meet her needs on the additional two days.[4] Ms. Jensen subsequently requested an informal review, and the program's assistant director upheld the reduced plan of care. She further requested a formal PCA hearing under section 178.671,[5] and the hearing was conducted in March 2004 before an impartial hearing officer. At this hearing, Ms. Jensen was represented by counsel who challenged aspects of the PCA program on several grounds, including federal preemption. The hearing officer upheld the Department's decision, and in February 2005, that decision was affirmed by the Jackson County Circuit Court.

Ms. Jensen claims on appeal that the "unmet need" and "undue hardship" regulations in Missouri's PCA program[6] conflict with parts of the federal Medicaid statute and its implementing regulations and guidelines.[7] According to Ms. Jensen,

2. The Department has identified Ms. Jensen as a "High Risk Client" who requires "After hours" services.

3. These provisions were repealed in 2005 and replaced by sections 660.661–.687. S.B. 539, 93d Gen. Assem., Reg. Sess. (Mo.2005).

4. The individual who evaluated Ms. Jensen in November 2003, indicated on her evaluation form that "this consumer has unmet needs all seven days per week." Nonetheless, because the evaluator determined that the family would meet Ms. Jensen's needs if a paid assistant were not available, the Department authorized only five days of paid assistance.

5. Statutory references are to RSMo. (2000), unless otherwise indicated.

6. These regulations were moved from title 5 to title 19 when the legislature shifted administration of the program to the Department. 19 C.S.R. 15–8.100–.520 (2005). Because they are now only available in title 19, we will provide the title 19 citations herein.

7. Specifically at issue, and addressed more fully *infra*, are title 42, section 1396a(a)(17)(D) of the United States Code, Grants to States for Medical Assistance Programs, 42 U.S.C.A. § 1396a(a)(17)(D) (West 2003); title 42, section 440.167 of the *Code of Federal Regulations*, 42 C.F.R. § 440.167(a)(1)

federal law does not allow her family's resources to be considered in determining the extent of medical assistance provided under a state PCA program. Because one of the "undue hardship" factors the Department considers in establishing whether a recipient's needs are unmet is based on such resources, Ms. Jensen claims that the requirement conflicts with federal law and is, therefore, void. She also contends that federal law allows recipients a free choice of qualified assistance providers and, because state regulations are requiring her to rely on volunteer care for two days out of seven, her free choice has been unlawfully abridged.

Article V, section 18, of the Missouri Constitution requires that we review administrative actions to determine whether they are authorized by law. Mo. Const. art. V, § 18. Similarly, section 536.140.2 provides that we determine, among other matters, whether the administrative action violates constitutional provisions, exceeds the agency's jurisdiction, or "[i]s, for any other reason, unauthorized by law." Under the Supremacy Clause, federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2.

■■■ The central issue in this case is whether a Missouri PCA program requirement, which takes into consideration the finances of family members, who are financially responsible for an adult aid recipient, in determining the extent of medical assistance that will be provided to that recipient, conflicts with federal law and is, therefore, preempted. Preemption has been summarized by the United States Supreme Court as that which is express or implied

and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (citation omitted). In the absence of explicit preemptive language, the courts generally recognize two types of implied preemption:

[F]ield pre-emption, where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it[;] and conflict pre-emption, where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Id.* (internal quotations and citations omitted).

■■■ While states are not required to participate in Medicaid, the courts have determined that once a state elects to participate in the program, it must comply with all statutory and regulatory requirements imposed by federal law. *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980); *J.K. By and Through R.K. v. Dillenberg*, 836 F.Supp. 694, 696 (D.Ariz.1993); *Conn. Hosp. Ass'n v. O'Neill*, 793 F.Supp. 47, 49 (D.Conn. 1992); *Rye Psychiatric Hosp. Ctr., Inc. v. Surles*, 777 F.Supp. 1142, 1144 (S.D.N.Y. 1991); *McNeil–Terry v. Roling*, 142 S.W.3d 828, 833 (Mo.App. E.D.2004). Medicaid is viewed as a cooperative state-federal program and, thus, is not susceptible to an express or implied field-preemption analysis. *Pharm. Research & Mfrs. of Am. v. Meadows*, 304 F.3d 1197, 1206 (11th Cir.2002), *cert. denied*, 538 U.S. 1056,

(1997); and the *State Medicaid Manual*, CENTERS FOR MEDICARE & MEDICAID SERVICES, U.S.

DEP'T OF HEALTH & HUMAN SERVICES, PUB. 45, THE STATE MEDICAID MANUAL (2005).

123 S.Ct. 2213, 155 L.Ed.2d 1105 (2003); *see also McNeil–Terry,* 142 S.W.3d at 833 (recognizing cooperative nature of program, court observes, nevertheless, that once state opts to provide optional Medicaid service, coverage must be sufficient to reasonably achieve its purpose). We seek, therefore, to determine whether our state law conflicts with federal law and is thereby preempted. *McNeil–Terry,* 142 S.W.3d at 834 (ruling that provision for extremely narrow state Medicaid dental services, i.e., dentures and mouth trauma only, conflicts with federal Medicaid regulation which requires "sufficient" coverage).

■ In determining "eligibility for and the extent of medical assistance"[8] provided under a state Medicaid plan, federal law requires that the plan "include reasonable standards ... which ... do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21." Grants to States for Medical Assistance Programs, 42 U.S.C.A. § 1396a(a)(17)(D) (West 2003). Missouri's Medicaid plan includes the personal care services option.[9] The Department's implementing regulations require that a PCA services plan of care include "[t]he maximum number of hours of PCA to be provided based on a client's/consumer's unmet need." 19 C.S.R. § 15–8.200(4)(C)1. "Unmet need" is defined under state regulations as follows:

Unmet needs are those routine tasks and activities of daily living as allowable by Medicaid but not adequately met by current support systems without causing

undue hardships to the client/consumer and/or caregiver[.]

*Id.* at § 15–8.100(1)(L). The phrase "current support systems" is not defined, but the Department defines "undue hardship."

An undue hardship is the result of a significantly difficult circumstance experienced by the caregiver who is currently meeting the needs of the person with a disability that creates a situation of burden, risk or harm to the caregiver or client/consumer. Undue hardship includes, but is not limited to, the following:

1. Loss of income;
2. Overall disintegration of the family:
3. Abuse and neglect;
4. Misuse of child labor;
5. Inadequacy of training; and/or
6. Physically contraindicated[.]

*Id.* at § (1)(M).

During testimony before the impartial hearing officer, these parts of the Department's regulations were referred to as a "supplanting policy." A Department witness who reviews plans of care under the PCA program testified that she is required to address the supplanting issue in each plan of care where a family member or good friend lives with or near a consumer. According to the hearing officer, "[t]he key issue in this case is the supplanting of services that are already available to the consumer from family members or others through [Ms. Jensen's] natural support system." The Department specifically reduced the services available to Ms. Jensen because she lives with her family, and the hearing officer affirmed that determination

---

8. Personal care services are included in the term "medical assistance" under the Medicaid program. 42 C.F.R. § 440.1 (1996) and 42 C.F.R. § 440.167 (1997).

9. According to title 42, sec. 440.225 of the *Code of Federal Regulations,* personal care services "may be furnished under the State plan at the State's option."

because Ms. Jensen did not specify "undue hardship" in her evaluation.

What the Department is essentially requiring of Ms. Jensen is that she show that her parents will lose income (undue hardship) if they provide PCA services to her as volunteers two days each week. This is required for Ms. Jensen to demonstrate that she has unmet needs and thus qualifies for PCA services seven days a week. Federal Medicaid law, however, states quite plainly that state plans may not, when determining the extent of medical assistance to be provided, "take into account the financial responsibility of any individual for any applicant or recipient of assistance . . . unless such applicant or recipient is such individual's spouse or such individual's child under age 21." 42 U.S.C.A. § 1396a(a)(17)(D). Ms. Jensen's parents, while not required by law to be financially responsible for her, have assumed that obligation by housing her. Because they do not fall within the federal exception as the recipient's spouse or as parents of a recipient under age twenty-one, the Department's requirement conflicts with federal law by standing "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade*, 505 U.S. at 98, 112 S.Ct. 2374.

The Department challenges this conclusion, claiming that section 1396a(a)(17)(D) of the federal Medicaid law "simply provides that when determining financial eligibility for medical assistance, a state may not allocate income of non-legally responsible persons to the applicant." The Department further contends that the section "does not apply to Missouri's unmet needs requirement because the unmet needs requirement is used to determine the applicant's *needs* eligibility, not *financial* eligibility." (emphasis in original). We disagree. Section 1396a(a)(17)(D) addresses not only financial eligibility, but also "the extent of medical assistance" provided to a recipient. And the Department's unmet needs requirement provides the basis for determining the extent of medical assistance, i.e., personal care services, that will be provided to a recipient.

The Department also claims that "[t]he unmet needs requirement does not take another's income into account in determining eligibility—the requirement focuses only on the needs of the consumer and whether they are met by the consumer's natural support system." On the contrary and as noted above, the Department specifically requires that the caregiver's hardship (loss of income) be shown in determining whether the recipient has unmet needs.

Citing the *State Medicaid Manual* § 4480 and a page in the *Federal Register*, the Department argues that the federal government has given the states flexibility "to determine the best method for providing services" under this optional Medicaid program.[10] While the Department is correct that it does have great flexibility in designing its PCA program, its requirements, nonetheless, may not conflict with federal law. *Harris*, 448 U.S. at 301, 100 S.Ct. 2671; *McNeil–Terry*, 142 S.W.3d at 833. The Department also attempts to bootstrap its argument by noting that Missouri's PCA program has been approved by the United States Department of

---

**10.** The Department focuses on provisions in these sources that allow states to define "family members" for purposes of excluding those who can be paid to provide personal care services in a manner more restrictive than under federal regulations. 62 Fed.Reg. 47,- 899 (Sept. 11, 1997); CENTERS FOR MEDICARE & MEDICAID SERVICES, U.S. DEP'T OF HEALTH & HU- MAN SERVICES, PUB. 45, STATE MEDICAID MANUAL § 4480.D. Because this case does not involve who is eligible to provide personal care services, we do not find this argument relevant.

Health and Human Services.[11] What the federal government approved in 1991, however, was just a broad description of the PCA program that did not include the specific "unmet need" and "undue hardship" regulations at issue.[12] Because we find that the PCA program requirements as to unmet need and undue hardship conflict with federal law to the extent that they consider family resources of adult aid recipients, they are preempted. And due to our decision on her first point, we will not address Ms. Jensen's second point.

▪ Additionally, Ms. Jensen requests an order that would allow her caregiver to be paid for the two days of services that have been uncompensated each week since the Department reduced Ms. Jensen's plan of care from seven days a week to five. The Department complains that this is the first time Ms. Jensen has raised this issue, and that it has not, therefore, been preserved for our review. The Department also argues that because the record lacks evidence as to the services provided by Ms. Jensen's caregiver, there is no basis on which to determine the amount of back pay she is owed. While Ms. Jensen did not specifically request such relief, she did request "for such other and further relief as this Court deems just and proper." Because back pay can be deemed just and proper as further relief, we do not believe that the issue has been waived.

For these reasons, we reverse the Department's decision reducing Ms. Jensen's PCA services from seven days a week to five days a week and remand for further proceedings to determine the amount her caregiver is owed for documented services that should have been compensated but

were rendered voluntarily since the reduction went into effect.

VICTOR C. HOWARD, P.J., and RONALD R. HOLLIGER, J., concur.

---

**11.** The state plan can be found at http://www.cms.hhs.gov/medicaid/stateplans/toc.asp?state=MO.

**12.** *Id.* Attachment 3.1–A.24.f.3 at 18g.