STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-07-78
JAD— BEN

IVAN SUZMAN,

Petitioner

v.

BRENDA HARVEY, COMMISSIONER
DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

Respondent

DECISION AND ORDER

Before the court is Petitioner's motion for a stay pursuant to 5 M.R.S.A. § 11004 and respondent's M.R. Civ. P. 12(b)(6) motion to dismiss Count II of the petition.

**Facts:**

Petitioner is a 57-year-old man with onset Parkinson's disease and receives benefits from respondent's MaineCare program. On November 16, 2007, respondent issued a final decision finding the hours that should be provided petitioner under the Home & Community Based Benefits for the Physically Disabled program to be fifty-seven. The final decision adopted the findings of a Hearing Officer made on September 28, 2007 that petitioner met the eligibility criteria for care under the MaineCare Benefits Manual and that claimant was receiving 23 hours per week at his own expense beyond the 80 hours provided under MaineCare. However, the final decision reversed the determination of the Hearing Officer that these additional services were not duplicative of MaineCare. Thus the final decision of respondent assessed petitioner's needs at 57 hours per week.

Petitioner thus brought an M.R. Civ. P. 80C petition for judicial review, joining to it a Count alleging that MaineCare § 22.02-4, on which respondent relied in its decision, violates 42 U.S.C. § 1396(a)(17)(D). Petitioner then, on December 12, 2007, appealed to respondent to stay its decision (not reduce hours) until this matter is judicially reviewed. Petitioner brought an action in federal district court on December 14, 2007, in substance re-alleging Count II of its petition in front of this court. On December 18, 2007, respondent denied petitioner's request for a stay, finding that the case failed to meet the standards required by 5 M.R.S.A. § 11004.

## Discussion:

I.     Motion For a Stay

Petitioner applied to respondent for a stay. Respondent denied that stay considering: 1) whether petitioner would suffer an irreparable injury as a result of denial; 2) whether petitioner demonstrated a strong likelihood of success on the merits; 3) harm to adverse parties and the general public.

5 M.R.S.A. § 11004 provides:

> The filing of a petition for review shall not operate as a stay of the final agency action pending judicial review. Application for a stay of an agency decision shall ordinarily be made first to the agency, which may issue a stay upon a showing of *irreparable injury to the petitioner, a strong likelihood of success on the merits*, and *no substantial harm to adverse parties or the general public*. A motion for such relief may be made to the Superior Court, but the motion shall show that application to the agency for relief sought is not practicable, or that application has been made to the agency and denied, with the reasons request. In addition, the motion shall show the reasons for the relief requested and the facts relied upon, which facts, if subject to dispute, shall be supported by affidavits. Reasonable notice of the motion shall be given to all parties to the agency proceeding. The court may condition relief under this rule upon State or any state agency or any official thereof. (emphasis added).

*Irreparable Injury*

An irreparable injury is one for which there is no adequate remedy at law. *Bangor Historic Track, Inc. v. Dep't of Agriculture, Food & Rural Resources*, 2003 ME 140, ¶ 10, 837 A.2d 129, 133 (citing *Bar Harbor Banking & Trust Co. v. Alexander*, 411 A.2d 74, 79 (Me. 1980)). The burden lies on the petitioner. *Bangor Historic Track, Inc.* at ¶ 12, 837 A.2d at 133. Parkinson's disease is terminal and degenerative. Its degenerative nature requires, petitioner argues, that he maintain the consistent care he receives and not lose 23 hours of weekly care. He argues that the loss of such care would have a serious adverse impact on his health and the 57 hours of care would be insufficient to treat his Parkinson's. Petitioner details this injury as inability to acquire food because lack of grocery store trips, no care for the preparation of meals, the kitchen not being cleaned, fewer or no timely clothing changes due to medication related sweating, and fewer baths. Petitioner also points to the purpose of MaineCare § 22.05, in which, "Covered Services must be required in order to maintain the member's current health status, or prevent or delay deterioration of a member's health and/or avoid long-term institutional care." He argues that the purpose of the provision is to prevent irreparable injury and thus failure to carry it out necessarily creates risk.

Respondent points out that based on petitioner's supplementing services out of his own pocket a nurse assessor assessed his needs at 57 hours a week from MaineCare. Respondent also argues that the harms isolated by the petitioner are purely speculative and not concretely proven thus he does not carry his burden. Petitioner responds that these allegations of harm come from petitioner's affidavit and are currently being experienced. Respondent's arguments analyze the merits of petitioner's claim and not, what seems strikingly obvious to this court, the simple notion that a Parkinson's patient if deprived of care will suffer an irreparable injury. Accordingly, petitioner has demonstrated an irreparable injury.

*Harm to the respondent and the public*

Petitioner argues that the veracity of harm to the respondent and the public is greatly in question given the fact that respondent has been providing him 80 hours of service a week for the past 9 years. Continued service until judicial resolution, he argues, would pose a small harm compared to that suffered by the petitioner. Respondent argues that money spent for resources provided to petitioner, which respondent has determined to be unnecessary, necessarily trade off with the potential resources provided to other individuals in the MaineCare system. Additionally, respondent argues, that by providing services to someone not eligible it would not comply with the Medicaid State Plan, and thus make it susceptible to sanctions for non-compliance.

Respondent's argument proves too much. If accepted, its argument would destroy *any* opportunity an individual petitioning for judicial review of an adverse decision by the respondent would have of obtaining a stay. 5 M.R.S.A. § 11004 clearly recognizes the device of a stay in some instances. Potential harm to the petitioner here outweighs harm to the generalized harm to the respondent and the general public.

*Likelihood of success on the merits*

Petitioner's argument is greatly predicated on its assertion that the MaineCare regulation § 22.02-4 directly conflicts with 42 U.S.C. § 1396a(a)(17)(D). § 22.02-4 states that an authorized plan of care must give "consideration to the member's living arrangement, informal supports, and services provided by other public or private funding sources..." § 1396a(a)(17)(D) requires that state medical plans must include "reasonable standards...for determining...the extent of medical assistance under the plan which...do not take into account the financial responsibility of any individual for

any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21..." He thus argues that federal law's language does not permit MaineCare's regulation, which takes informal supports and funding sources into account in allocating services as exemplified by DHHS actions here.

A "likelihood of success on the merits" is "at most, a probability; at least, a substantial possibility." *Bangor Historic Track, Inc. v. Dep't of Agriculture*, 2003 ME 140, ¶ 9, 837 A.2d 129, 132. This court is not convinced that petitioner has reached either of these benchmarks. The statutory section is not as simple as petitioner quotes it. 42 U.S.C. § 1396a(a) lists the mandatory requirements for a State plan for medical assistance. 42 U.S.C. § 1396a(a)(17)(D) mandates that State plans' reasonable standards:

> [D]o not take into account the financial responsibility *of* any individual *for* any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under 21...

The statutory section would thus preclude taking into account the financial responsibility *of* another individual *for* petitioner. §§ 1396a(a)(17)(B) and (C) require that standards:

> (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and...as would not be disregarded (or set aside for future needs) in determining his eligibility for such aid, assistance, or benefits,(C) provide for reasonable evaluation of any such income or resources.

It seems, to this court, respondent was taking into account petitioner's ability to provide care for himself, rather than evaluating another's ability to provide resources for him. The court sees no conflict between the federal statutory scheme and MaineCare regulation § 22.02-4, accordingly petitioner has not proven he is likely to succeed on the merits of his case.

II. Motion to Dismiss

A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *Plimpton v. Gerrard*, 668 A.2d 882, 885 (Me. 1995). When reviewing a motion to dismiss, the material allegations of the complaint are accepted as true. *Id.* In ruling on a motion to dismiss, the court should "consider the material allegations of the complaint as admitted and review the complaint in the light most favorable to the plaintiffs to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiffs to relief pursuant to some legal theory." *Bussell v. City of Portland*, 1999 ME 103, ¶ 1, 731 A.2d 862. Dismissal for failure to state a claim is appropriate only where it appears beyond doubt that the plaintiff is entitled to no relief under any set of facts which he might prove in support of his claim. *Dutil v. Burns*, 674 A.2d 910, 911 (Me. 1996). The legal sufficiency of a complaint is a question of law. *Sargent v. Buckley*, 1997 ME 159, ¶ 10, 697 A.2d 1272, 1275. If, on a motion to dismiss, matters outside the pleadings are presented and considered by the court, the motion shall be treated as one for summary judgment.

Respondent argues that Count II fails to state a basis for relief independent from the M.R. Civ. P. 80C count. The ultimate relief sought in both instances is an order for coverage of the full 80 hours of service based on the invalidity of § 22.02-4. The APA certainly provides the statutory authority to declare that § 22.02-4 violates a federal statute. *See Conservation Law Foundation v. Dep't of Envt'l Protection*, 2003 ME 62, ¶¶19-20, 823 A.2d 551, 558.

Petitioner's response is curious, he argues that the difference between Count I and II is that Count II involves the supremacy clause and federal preemption and is thus different. The premise of Count I, though also inclusive of a substantial evidence challenge, is the supremacy clause challenge based on his interpretation of §

1396(a)(17)(D).  Petitioner also argues that Count II asks both for a declaration of invalidity and a reversal of the determination.  Petitioner's argument is unavailing. Under Count I, the court would conclude that the rule is invalid in order to reverse the decision under its APA/M.R. Civ. P. 80C authority (notwithstanding a substantial evidence question), thus achieving both of these objectives.  In the event there is no substantial evidence, even if Count II were independent, it would be improper for the court to reach the constitutional or statutory questions whether posed in Count I or independently in Count II.  Thus, Count II is not an independent claim and should be dismissed as duplicative of Count I.

The entry is

Petitioner's motion for a stay is DENIED.

Respondent's motion to dismiss Count II of petitioner's petition is GRANTED. Count II is DISMISSED as duplicative of Count I.

May _5_, 2008

Justice Joseph Jabar

Date Filed __12/17/07__ _____ Docket No. __AP-07-78__

County

Action ___Petition For Review___
80C

# J. JABAR

Ivan Suzman                         vs.    Brenda Harvey, Commissioner DHHS

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Ross A. Doerr, Esq.<br>Disability Rights Center<br>PO Box 2007<br>Augusta, ME 04338-2007 | Janine A. Raquet, AAG<br>6 State House Station<br>Augusta Maine 04333-0006 |

| Date of Entry | |
|---|---|
| 12/21/07 | Petition For Review Of Final Agency Action, filed 12/17/07. |
| 12/26/07 | Application for Stay of Final Agency Action, filed. s/Doerr, Esq.<br>Proposed Order, filed. |
| 12/27/07 | Petition to Specify the course of future proceedings, filed. s/Doerr, Esq. |
| 1/4/07 | Respondent's Motion to Dismiss and Opposition to Petitioner's Motion to Specify the Future Course of Proceedings with Incorporated Memorandum of Law, filed. s/Raquet, AAG |
| 1/16/08 | Amended Motion to Dismiss and Opposition to Petitioner's Motion to Specify Future Course of Proceedings, filed. s/Raquet, Esq.<br>Proposed Order, filed. |
| 1/16/08 | Respondent's Opposition to Petitioner's Application for Stay, filed. |
| 1/17/08 | Amended Motion To Specify The Future Course Of The Proceedings, With Incorporated Memorandum Of Law, filed 1/16/08. s/Doerr, Esq.<br>Proposed Order, filed. (attachments) |
| 1/24/08 | Opposition to Respondent's Motion to Dismiss Count II of the Petition for Review of Final Agency Action with Incorporated Memorandum of Law, filed. s/Oclepka, Esq.<br>Certificate of service, filed. s/Doerr, Esq. |
| 2/4/08 | Affidavit of Ivan Suzman, filed. s/Suzman |
| 2/5/08 | Respondent's Reply to Petitioner's Opposition to Motion to Dismiss, filed. s/Raquet, AAG |
| 2/5/08 | Respondent's Opposition to Petitioner's Amended Motion to Specify the Future Course of Proceedings, filed. s/Raquet, AAG |
| 2/11/08 | Return receipt with return service made upon AAG on 12/18/07, filed.<br>Return receipt with return service made upon Brenda Harvey, Comm., filed. |
| ------ | Amended Motion for Stay of Final Agency Action, filed. s/Doerr, Esq. |

| Date of Entry | Docket No. _____ |
|---|---|
| 2/14/08 | Respondent's Opposition to Petitioner's Amended Motion for Stay, filed. s/Raquet, AAG |
| 2/20/08 | Reply to Opposition to Amended Motion for Stay of Final Agency Action, filed. s/Doerr, Esq.<br><br>Notice of setting for __4/8/08__<br><br>sent to attorneys of record. |
| 3/20/08 | MOTION TO CONTINUE, Jabar, J.<br>Motion denied. Case to be moved to 9:00 a.m. on 4/8/08<br>Copies to attys. of record. |
| 4/8/08 | Hearing held with the Hon. Justice Joseph Jabar, presiding.<br>Ross Doerr, Esq. for the Petitioner and Janine Raquet, AAG for the Respondent.<br>Oral arguments made to the court. Court to take matter under advisement. |
| 5/5/08 | DECISION AND ORDER, Jabar, J.<br>Petitioner's motion for stay is DENIED.<br>Respondent's motion to dismiss Count II of petitioner's petition is GRANTED. Count II is DISMISSED as duplicative of Count I.<br>Copies mailed to attys. of record. |

STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-2007-78
JN·) · ? ;;· ?/·· ·

IVAN SUZMAN

Petitioner

v.

DECISION AND ORDER

BRENDA HARVEY, in her official capacity
as COMMISSIONER OF THE MAINE
DEPARTMENT OF HEALTH AND
HUMAN SERVICES

Respondent

Before the court is petitioner's M.R. Civ. P. 80C petition for judicial review of the respondent Maine Department of Health and Human Services (DHHS)'s decision reducing petitioner's Personal Care Attendant (PCA) weekly service hours from 80 to 57.

**Factual & Procedural Background:**

Petitioner, a 57-year-old man with younger onset Parkinson's disease, receives benefits from respondent's MaineCare Home and Community Based Benefits Program for the Physically Disabled (HCB program). Prior to June 2007, petitioner had been receiving 80 hours per week of in-home support through MaineCare. In addition to the 80 hours of MaineCare-reimbursed services, petitioner was also purchasing additional services using his own resources. In June of 2007, petitioner requested an assessment to determine whether he could increase his MaineCare-reimbursed hours to 86.25 hours per week, the maximum allowable under MaineCare.

DHHS's agent, Goold Health Systems (GHS), assessed petitioner on June 21, 2007. Laura Moody, RN, conducted the assessment, determining that petitioner's needs totaled 57 hours. RN Moody did not include needs that were being met by Meals on Wheels, PCA's paid for through the State of Maine Alpha One Program, and services being provided by a live-in PCA who was bartering her room and board in exchange for providing certain services to the petitioner.[1]

In response an appeal by petitioner regarding the reduction in his PCA hours, on November 16, 2007, respondent issued a final decision finding that petitioner should be provided with 57 PCA hours under the HCB program. The Commissioner's final decision adopted the Hearing Officer's findings of fact[2] made on September 28, 2007, that petitioner met the eligibility criteria for care under the MaineCare Benefits Manual, and that petitioner was receiving 23 hours of additional care per week at his own expense, beyond the 80 hours provided under MaineCare. However, the final decision declined to accept the finding of the Hearing Officer that petitioner's 23 hours of additional services were not duplicative of MaineCare-reimbursed hours. The final decision assessed petitioner's needs at 57 hours per week, finding the "RN assessor accurately noted each ADL/IADL," and "accurately documented" the "time involved for each activity."[3]

---

[1] The record, however, contains no evidence as to any finaincial impact on petitioner.

[2] The Hearing Officer recommended that the Commissioner overturn the reduction in MaineCare-reimbursed hours, finding that "[e]xcept to the extent that Respondent [assessor] factored in services provided to Claimant at his own expense," the assessment was a "reasonably reliable depiction of Claimant's care needs at the time." The Hearing officer concluded petitioner was paying for an additional 23 hours of services per week.

[3] The Commissioner also found it appropriate to reduce petitioner's hours based upon duplicative services petitioner acquired at his own expense. Declining to accept the Hearing Officer's Finding of Fact # 3, the Commissioner found:

> MaineCare programs do not supplant resources available through other programs, providers, friends, etc. Nor do the rules allow for supervision/socialization. Because of Mr. Suzman's statements regarding the live in PCA and other part-time PCA a reduction

Petitioner brought an M.R. Civ. P. 80C petition for judicial review, joining with it a Count alleging that section 22.02-4 of the MaineCare Benefits Manual, on which respondent relied in its decision, violates 42 U.S.C. § 1396(a)(17)(D).

**Standard of Review:**

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, this court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. Centamore v. Dep't of Human Servs., 664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." Seider v. Bd. of Exam'rs of Psychologists, 2000 ME 206, ¶ 9, 762 A.2d 551, 555 (citing CWCO, Inc. v. Superintendent of Ins., 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261). The court will "not attempt to second-guess the agency on matters falling within its realm of expertise" and judicial review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." Imagineering, Inc. v. Superintendent of Ins., 593 A.2d 1050, 1053 (Me. 1991). "Inconsistent evidence will not render an agency decision unsupported." Seider, 2000 ME 206, ¶ 9, 762 A.2d at 555. The burden of proof rests with the party seeking to overturn the agency's decision, and that party must prove that no competent evidence supports the Board's decision. See Bischoff v. Bd. of Trustees, 661 A.2d 167, 170 (Me. 1995).

**Discussion:**

---

in the number of IADL hours for this program was correctly determined by the assessor. See Chapter II, Section 22.02-4 of the MaineCare Benefits Manual. In addition, at the time of the last assessment, Mr. Suzman was being provided approximately 35 hours per week by his live in PCA in exchange for her room and board.

There is substantial evidence to support the final decision of the Commissioner that petitioner's unmet needs totaled 57 hours. RN Moody's original assessment found that the petitioner had 57 hours of unmet needs. She took into consideration that some of petitioner's needs were being met by Meals on Wheels, PCA's paid for through the Alpha One Program, and through an informal barter arrangement between petitioner and a PCA. RN Moody, however, did not merely determine how many hours were being provided to petitioner by outside resources and then subtract that amount from the 80 hours petitioner had been receiving through MaineCare. Instead, she made a *de novo* determination of petitioner's needs, taking into consideration the other sources of care that he was receiving to fulfill those needs, as described by petitioner.[4] Contrary to petitioner's contentions, as discussed below, it was not improper for RN Moody to consider these other services.

Section 22.02-4 of the MaineCare Benefits Manual states that an authorized plan of care must "reflect the needs identified by the [GHS] assessment, giving consideration to the member's living arrangement, informal supports, and services provided by other public or private funding sources . . . ." Me. Dep't of Hum. Serv., 10 144 CMR 101, ch. II, § 22.02-4. RN Moody's assessment of petitioner's needs—adopted as accurate and relied upon in the Commissioner's final decision—took into consideration certain services petitioner was receiving in addition to services provided under the HCB program.[5] Accordingly, it must be determined whether consideration of these outside services in the original assessment was proper under section 22.02-4. Recognizing that an agency's interpretation of its own rules will not be set aside unless the rules plainly

---

[4] RN Moody testified she would not automatically reduce hours because someone was privately paying for them. (R. Ex. D at 56.)

[5] For instance, RN Moody testified that, for example, "[i]f [petitioner] says to me the PSS who lives here at night makes my breakfast I can't put breakfast on the IADL list for a paid PCA to do." (R. Ex. D at 25.)

compel a contrary result, <u>Fryeburg Health Care Ctr. v. Dep't of Human Servs.</u>, 1999 ME 122, ¶ 7, 734 A.2d 1141, 1143, it cannot be said that the Commissioner's reliance on the original assessment's consideration of petitioner's alternative support was improper. RN Moody's assessment detailed petitioner's needs and the time involved for each ADL/IADL activity covered under MaineCare, deducting time based upon petitioner's statements regarding alternative support. This process is consistent with section 22.02-4's directive that a plan of care must give "consideration to the member's living arrangement, informal supports, and services provided by other public or private funding sources."

Petitioner further argues that federal law preempts section 22.02-4. <u>See</u> <u>Wis. Pub. Intervenor v. Mortier</u>, 501 U.S. 597, 604 (1991) (holding state laws that "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution" are preempted). Petitioner argues that section 22.02-4 conflicts with 42 U.S.C. § 1396a(a)(17)(D), which provides that state medical plans must include:

> [r]easonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under 21 . . . .

This statutory provision would thus preclude, in determining eligibility for medical assistance, taking into account the financial responsibility *of another* individual *for petitioner*. In this instance, the original assessment, relied upon by the Commissioner in reducing petitioner's hours, took into account petitioner's ability to provide care for himself, rather than evaluating another individual's financial responsibility for petitioner. Although this court agrees with petitioner that section 1396a(a)(17)(D) addresses not only financial eligibility, but also "the extent of medical assistance"

provided to a recipient, see Jensen v. Missouri Dep't of Health and Senior Servs., 186 S.W.3d 857, 862 (Mo. Ct. App. W.D. 2006), this does not alter the conclusion.

In Jensen, the central issue was whether a Missouri Department of Health and Senior Services (Department) rule conflicted with 42 U.S.C. § 1396a(a)(17)(D) by considering the finances of an applicant's family members in determining the extent of medical assistance that would be provided that applicant. Id. at 860. The Department rule required that a Personal Care Assistance (PCA) services plan of care include "the maximum number of hours of PCA to be provided based on a client's/consumer's unmet need." Id. at 861. "Unmet need" was defined by Department regulations as "those routine tasks and activities of daily living as allowable by Medicaid but not adequately met by current support systems without causing undue hardships to the client/consumer and/or caregiver[.] Id. Pursuant to these regulations, following an annual review, the applicant's PCA services were reduced because she did not document that it would be an "undue hardship" for her parents to meet her needs. Id. at 859. In overturning the Department's decision, the court found that the Department's regulations essentially required the applicant to show "that her parents w[ould] lose income (undue hardship) if they provide[d] PCA services to her." Id. at 862. Such a regulation, the court held, was preempted because

> [f]ederal Medicaid law . . . states quite plainly that state plans may not, when determining the extent of medical assistance to be provided, "take into account the financial responsibility of any individual for any applicant or recipient of assistance . . . 42 U.S.C.A. § 1396a(a)(17)(D). Ms. Jensen's parents, while not required by law to be financially responsible for her, have assumed that obligation by housing her. Because they do not fall within the federal exception as the recipient's spouse or as parents of a recipient under age twenty-one, the Department's requirement conflicts with federal law . . . .

Id.

The court in <u>Jensen</u>, however, explicitly recognized that the Department's rule specifically took into account "another's income," rather than the needs of the applicant herself:

> The Department also claims that "the unmet needs requirement does not take another's income into account in determining eligibility -- the requirement focuses only on the needs of the consumer and whether they are met by the consumer's natural support system." On the contrary and as noted above, the Department specifically requires that the caregiver's hardship (loss of income) be shown in determining whether the recipient has unmet needs.

<u>Id</u>.

Conversely, unlike the Department in <u>Jensen</u>, the GHS assessment relied upon by the Commissioner focused on the needs of the petitioner and the support the petitioner was able to provide for himself. Whereas in <u>Jensen</u> the Department rules conflicted with federal law "to the extent that they consider[ed] family resources," here, pursuant to the assessment's application of section 22.02-4, only *petitioner's* resources were considered. The importance of this distinction—considering the resources *of the applicant* as opposed to financial responsibility of another *for the applicant*—is bolstered by the plain language of section 1396a(a)(17)(D), which prohibits the consideration of "the financial responsibility of any individual for any applicant." Contrary to the petitioner's contention, this court does not consider those providing petitioner with additional services "financially responsible" for the petitioner. Petitioner was utilizing his own resources to obtain these services. The GHS assessment considered petitioner's ability to provide himself with care, not, like <u>Jensen</u>, the financial resources of others responsible for petitioner. Therefore, the Commissioner's interpretation of the

regulation, as applied to petitioner through the GHS assessment, does not conflict with 42 U.S.C. § 1396a(a)(17)(D).[6]

The entry is:

> The petition is DENIED and the decision of the Maine Department of Health and Human Services is AFFIRMED.

September /6, 2008

Justice Joseph Jabar

---

[6] Because, as applied, section 22.02-4 does not conflict with federal law, this court does not address petitioner's facial challenge. See, e.g., Sabri v. United States, 541 U.S. 600, 609 (2004) (finding that because claims of facial invalidity often rest on speculation, as a consequence, they raise the risk of "premature interpretation of statutes on the basis of factually barebones records").

Date Filed __ 12/17/07 _____ _____ Docket No. __AP-07-78_____

County

Action _____ Petition For Review _____
              80C

# J. JABAR

Ivan Suzman                vs.      Brenda Harvey, Commissioner DHHS

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Ross A. Doerr, Esq.<br>Disability Rights Center<br>PO Box 2007<br>Augusta, ME 04338-2007 | Janine A. Raquet, AAG<br>6 State House Station<br>Augusta Maine 04333-0006 |

| Date of Entry | |
|---|---|
| 12/21/07 | Petition For Review Of Final Agency Action, filed 12/17/07. |
| 12/26/07 | Application for Stay of Final Agency Action, filed. s/Doerr, Esq. Proposed Order, filed. |
| 12/27/07 | Petition to Specify the course of future proceedings, filed. s/Doerr, Esq. |
| 1/4/07 | Respondent's Motion to Dismiss and Opposition to Petitioner's Motion to Specify the Future Course of Proceedings with Incorporated Memorandum of Law, filed. s/Raquet, AAG |
| 1/16/08 | Amended Motion to Dismiss and Opposition to Petitioner's Motion to Specify Future Course of Proceedings, filed. s/Raquet, Esq. Proposed Order, filed. |
| 1/16/08 | Respondent's Opposition to Petitioner's Application for Stay, filed. |
| 1/17/08 | Amended Motion To Specify The Future Course Of The Proceedings, With Incorporated Memorandum Of Law, filed 1/16/08. s/Doerr, Esq. Proposed Order, filed. (attachments) |
| 1/24/08 | Opposition to Respondent's Motion to Dismiss Count II of the Petition for Review of Final Agency Action with Incorporated Memorandum of Law, filed. s/Ociepka, Esq. Certificate of service, filed. s/Doerr, Esq. |
| 2/4/08 | Affidavit of Ivan Suzman, filed. s/Suzman |
| 2/5/08 | Respondent's Reply to Petitioner's Opposition to Motion to Dismiss, filed. s/Raquet, AAG |
| 2/5/08 | Respondent's Opposition to Petitioner's Amended Motion to Specify the Future Course of Proceedings, filed. s/Raquet, AAG |
| 2/11/08 | Return receipt with return service made upon AAG on 12/18/07, filed. Return receipt with return service made upon Brenda Harvey, Comm.,filed. |
| ------ | Amended Motion for Stay of Final Agency Action, filed. s/Doerr, Esq. |

| Date of Entry | Docket No. _____ |
|---|---|
| 2/14/08 | Respondent's Opposition to Petitioner's Amended Motion for Stay, filed. s/Raquet, AAG |
| 2/20/08 | Reply to Opposition to Amended Motion for Stay of Final Agency Action, filed. s/Doerr, Esq.<br><br>*Notice of setting for 4/8/08*<br><br>*sent to attorneys of record.* |
| 3/20/08 | MOTION TO CONTINUE, Jabar, J.<br>Motion denied. Case to be moved to 9:00 a.m. on 4/8/08<br>Copies to attys. of record. |
| 4/8/08 | Hearing held with the Hon. Justice Joseph Jabar, presiding.<br>Ross Doerr, Esq. for the Petitioner and Janine Raquet, AAG for the Respondent.<br>Oral arguments made to the court. Court to take matter under advisement. |
| 5/5/08 | DECISION AND ORDER, Jabar, J.<br>Petitioner's motion for stay is DENIED.<br>Respondent's motion to dismiss Count II of petitioner's petition is GRANTED. Count II is DISMISSED as duplicative of Count I.<br>Copies mailed to attys. of record.<br>Copies mailed to repositories |
| 5/16/08 | Certified Record, filed. s/Raquet, AAG |
| 6/23/08 | Petitioner's 80C Brief, filed. s/Doerr, Esq. |
| 7/23/08 | Respondent's Brief, filed. s/Raquet, Esq. |
| 8/11/08 | Petitioner's 80C Reply Brief, filed. s/Doerr, Esq. |
| 8/13/08 | Uncontested Motion to Extend Time to File Reply Brief, filed. s/Doerr, Esq.<br>Proposed Order, filed.<br><br>UNCONTESTED MOTION TO EXTEND TIME TO FILE REPLY BRIEF, Jabar, J.<br>Petitioner's uncontested motion for time extension for reply brief is GRANTED.<br>Copies mailed to attys. of record. |
| 9/18/08 | DECISION AND ORDER, Jabar, J.<br>The petition is DENIED and the decision of the Maine Department of Health and Human Services is AFFIRMED.<br>Copies to attys. of record and copies to repository. |